Jason D Haymore (UT-13236)
Zakia A. Richardson (UT-14298)
PEARSON BUTLER; PLLC
1802 South Jordan Parkway #200
South Jordan, UT 84095
(t)801-495-4104
JasonH@pearsonbutler.com
Zakia@pearsonbutler.com
Attorneys for Plaintiff

UNITED STATES COURT DISTRICT OF UTAH
CENTRAL DIVISION, STATE OF UTAH

| VICKIE BAGSHAW, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>COTTONWOOD HEIGHTS POLICE DEPARTMENT, UNIFIED POLICE DEPARTMENT, CHIEF ROBERT RUSSO, SERGEANT RYAN SHOSTED, OFFICER EMILY WOOD and JOHN DOES 1-10,<br><br>Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Case No.:<br><br>Honorable: |
|---|---|

Plaintiff Vickie Bagshaw ("Plaintiff" or "Mrs. Bagshaw"), by and through counsel, hereby submits this Complaint and Jury Demand and complains against Defendant Cottonwood Heights Police Department, (hereinafter "CHPD"), Defendant Unified Police Department, (hereinafter "UPD"), Defendant Chief Robert Russo (hereinafter "Russo"), Defendant Sergeant Ryan Shosted (hereinafter "Shosted"), Defendant Officer Emily Wood, and collectively (the "Defendants") as follows:

## INTRODUCTION

1.      This is a proceeding to redress several unlawful and discriminatory practices including disability discrimination and retaliation in violation of the Americans with Disabilities Act 42 U.S.C. §12101, et seq., as amended (the "ADA"), sexual harassment in violation of Title

VII of the Civil Rights Act of 1964, § 2000e, et seq., as amended (the "CRA"), and deprivation of due process rights under the Fourteenth Amendment and unlawful search and seizure under the Fourth Amendment in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, ("Section 1983").

## PARTIES

2.     Mrs. Bagshaw is an individual who at all times relevant herein, was and is a resident of Salt Lake County, Utah.

3.     Defendant Cottonwood Heights Police Department is a body corporate and politic which operates within Salt Lake County, Utah.

4.     Defendant Unified Police Department is an unincorporated body politic which operates within Salt Lake County, Utah.

5.     Defendant, Robert Russo, in his individual capacity, who at all relevant times was acting under color of law and as an officer, agent and employee of Salt Lake City, resides in Salt Lake County, Utah.

6.     Defendant, Ryan Shosted, in his individual capacity, who at all relevant times was acting under color of law and as an officer, agent and employee of Salt Lake City, resides in Salt Lake County, Utah.

7.     Defendant, Emily Wood, in her individual capacity, who at all relevant times was acting under color of law and as an officer, agent and employee of Salt Lake City, resides in Salt Lake County, Utah.

8.     Defendant employs more than fifteen employees and is an employer within the meaning of Title VII.

9.     Mrs. Bagshaw is informed and believes and based thereon alleges that each

defendant is the agent, servant, employee, successor in interest, co-conspirator, and/or alter ego of every other defendant, and that, in doing the acts alleged herein, each defendant acted as the agent of and with the consent, knowledge, authorization and/or ratification of every other defendant herein.

10. Mrs. Bagshaw is informed and believes and based thereon alleges that each defendant was in some manner intentionally and/or negligently and legally responsible for the events and happenings alleged in this Complaint and for plaintiff's injuries and damages.

## JURISDICTION AND VENUE

11. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331, in that this action arises under federal law, specifically, the ADA, CRA, and Section 1983.

12. The unlawful employment discrimination giving rise to Plaintiff's claims were committed within the jurisdiction of this court. Therefore, venue is proper under 42 U.S.C. §2000e-5(f) and 28 U.S.C. §1391.

13. Mrs. Bagshaw has fulfilled all conditions precedent under the ADA and CRA prior to commencement of this lawsuit and has fulfilled all obligations to exhaust her administrative remedies.

14. Mrs. Bagshaw filed a timely charge of disability and sex discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Utah Labor Commission.

15. The EEOC issued Mrs. Bagshaw a Notice of Right to Sue on September 26, 2018. A true and accurate copy of the Notice of Right to Sue is attached hereto as Exhibit A and incorporated herein by reference.

## FACTS

16. Lieutenant Bartlett of the CHPD encouraged Mrs. Bagshaw to apply for a police officer position with CHPD in February 2015.

17. During the Chief's interview, Chief Russo expressed a desire to have Mrs. Bagshaw become the first female police officer to ride motors with CHPD.

18. Mrs. Bagshaw began employment as a police officer assigned to the traffic division with CHPD on April 13, 2015.

19. Mrs. Bagshaw successfully performed her job duties as a police officer earning a commendation in 2015 from the Cottonwood Heights City Council for honorable service in the field.

20. On (X Date) Chief Russo noted to Sergeant Peck that Mrs. Bagshaw led her department in daily field metrics such as special traffic enforcement ("STE").

### Gender Discrimination in violation of Title VII of the Civil Rights Act

21. Throughout her employment at CHPD Mrs. Bagshaw was subjected to a hostile work environment based upon sex.

22. Co-worker, Officer Brayden Wyatt frequently made inappropriate comments of a sexual nature that were outrageous and offensive.

23. In one example, Wyatt described to officers in the CHPD breakroom how women enjoyed giving him oral sex because he has a tattoo of some sort of marshmallow man on his pelvis that gets bigger and smaller as the woman's head moves up and down. This story was told while Wyatt gyrated his hips and hands in motions mimicking his oral sex story. Sergeant Ricks heard this comment, laughed, but took no action.

24. Mrs. Bagshaw complained about Wyatt's oral sex story to Sergeant Ricks who responded that Wyatt was a "dumb ass" and Sergeant Ricks explained he just tunes him [Wyatt] out.

25. Several co-workers complained about Officer Wyatt's behavior.

26. Officer Wyatt's outrageous and offensive behavior occurred so often Sergeant Kenneth Dailey frequently told Officer Wyatt to "save if for the breakroom."

27. Sergeant Dailey informed Mrs. Bagshaw and Officer Jeremy Nelson it was his goal not to write Officer Wyatt up.

28. Officer Wyatt's behavior got so bad that Officer Nelson established a safe word for when Wyatt crossed a line. The safe word was "leg."

29. On at least one occasion, Officer Wyatt sent Mrs. Bagshaw a snapchat video of his dog chewing on a dildo.

30. Mrs. Bagshaw was subject to sexual harassment in violation of Title VII of the Civil Rights Act.

31. CHPD failed to take action to correct and stop a known hostile work environment.

32. Mrs. Bagshaw was subject to unlawful retaliation under Title VII of the Civil Rights Act.

33. In addition to the sexual harassment, Mrs. Bagshaw was also discriminated against by her superiors because of injuries she sustained while working that resulted in a disability protected by the Americans with Disabilities Act.

**<u>Disability Discrimination in violation of the ADA</u>**

34. On February 14, 2016, Mrs. Bagshaw slipped and injured herself during an on-duty police call.

35. Shortly after this incident, Sergeant Peck revealed Mrs. Bagshaw's personal medical information regarding the February 2016 injury to other officers in a group chat room, violating HIPPA requirements.

36. Officer Steve Olsen responded to the online chat message and indicated he did not know Mrs. Bagshaw had been injured.

37. During March 2016, Mrs. Bagshaw injured her back while performing motorcycle recertification training. Sergeant Peck forced Mrs. Bagshaw to ride a motorcycle she was physically unsuited to ride.

38. Sergeant Peck ordered Mrs. Bagshaw to continue working.

39. Mrs. Bagshaw reported the motorcycle injury to human resources representative Heather Sundquist on or about April 1, 2016. Ms. Sundquist directed Mrs. Bagshaw to be seen at WorkMed as soon as possible.

40. Prior to the recertification training, police officials referred to Mrs. Bagshaw as "Special V" and treated her with a lot of respect.

41. After Mrs. Bagshaw injured herself during the motorcycle training CHPD members subjected her to disparate treatment.

42. After Mrs. Bagshaw was injured, Sergeant Peck and Sergeant Dailey started treating her differently. Sergeant Dailey stopped talking to her unless he had to and Sergeant Peck would frequently make disrespectful comments to her.

43. Sergeant Peck would not allow Mrs. Bagshaw to perform specific duties and responsibilities such as special traffic enforcements (STE).

44. On one occasion Sergeant Peck called dispatch to remove Mrs. Bagshaw from a STE she confirmed she would perform.

45. On another occasion, Sergeant Peck announced in a work chat room that Mrs. Bagshaw was not allowed to conduct any STEs, even though she was a traffic officer.

46. Sergeant Peck chastised Mrs. Bagshaw for calling out on STEs. However, Sergeant Peck and other officers were participating in the same conduct, calling out and conducting STEs.

47. STE assignments are an intricate activity for a traffic officer as it allows for increased statistics which are used to measure police officer performance.

48. Mrs. Bagshaw complained about Sergeant Peck's behavior to Lieutenant Mark Askerlund, Ms. Sundquist, and Chief Russo.

49. On February 12, 2017, Mrs. Bagshaw suffered a serious injury after a cabinet fell off the wall in the break room and landed on her.

50. As a result of the cabinet falling in the breakroom, Mrs. Bagshaw sustained injuries to her neck, shoulder, and exacerbated her back injury.

51. Because of the injuries sustained from the wall cabinet, Mrs. Bagshaw was unable to bend, sit, walk, and stand, for any extended period of time without considerable pain.

52. Mrs. Bagshaw requested on multiple occasions to work light duty, but her requests were denied.

53. Other CHPD officers were offered light duty in similar circumstances.

54. On May 24, 2017, Mrs. Bagshaw notified Ms. Sundquist and then Sergeant Dailey that she needed time off from work for surgery.

55. In response to Mrs. Bagshaw's request for medical leave, Chief Russo began conducting an investigation alleging that Mrs. Bagshaw was on prescription opiates while working.

56. Mrs. Bagshaw was subjected to harassment based on her disability in violation of the Americans with Disabilities Act.

57. Mrs. Bagshaw was not provided a reasonable accommodation in violation of the Americans with Disabilities Act.

58. CHPD refused to participate in a good faith interactive process regarding Mrs. Bagshaw's disability in violation of the Americans with Disabilities Act.

59. Mrs. Bagshaw was subject to unlawful retaliation for complaining of the harassment she received because of her disability in violation of the Americans with Disabilities Act.

**Section 1983 violations of due process and unlawful search and seizure**

60. In the days following, Mrs. Bagshaw's request for medical leave was denied and she was placed on administrative leave.

61. On or about May 25, 2017, Mrs. Bagshaw was falsely accused of taking opiates while on duty and failing to notify CHPD of opiate use.

62. Mrs. Bagshaw agreed to discuss these false allegations in a Garrity interview.

63. In accordance with the investigation of the allegations in paragraph 61, Sergeant Shosted ordered Mrs. Bagshaw to appear with 20 minutes. Mrs. Bagshaw arrived at CHPD with counsel.

64. At the interview, Mrs. Bagshaw was ordered to submit to a blood draw. Mrs. Bagshaw made it clear that she would not consent to any such blood draw.

65. At no time has Mrs. Bagshaw been made aware of circumstances which would amount to reasonable suspicion of opiate drug use while on the job.

66.     Without the consent of Mrs. Bagshaw, Emily Wood, a UPD officer, withdrew blood from Mrs. Bagshaw.

67.     Ultimately, there were no opiates found in Mrs. Bagshaw's blood as a result of the drug screening.

68.     Despite the clean unlawful drug screening, CHPD unlawfully issued two eight-hour suspensions without pay against Mrs. Bagshaw which were not appealable.

69.     On September 7, 2017, Assistant Chief Brenneman and Lieutenant Bartlett appeared at Mrs. Bagshaw's home and relieved her of her duties and responsibilities as a CHPD officer.

70.     CHPD alleged Mrs. Bagshaw's termination was made as a result of her FMLA leave expiring before a medical release was submitted to work.

71.     The reasons Mrs. Bagshaw was given for her suspension and termination are pretext for discrimination.

72.     The termination of Mrs. Bagshaw, without a predetermination hearing, a post deprivation hearing, and the opportunity to be represented by counsel, violated Mrs. Bagshaw's right to procedural due process of law under the United States Constitution.

73.     CHPD's conduct violated Mrs. Bagshaw's Fourteenth Amendment rights by depriving her of a property interest without due process.

74.     At all times, Russo acted under the color of state law and was the final policy-making authority of CHPD in the determination to fire Mrs. Bagshaw.

75.     As a result of Defendants' wrongful conduct, Mrs. Bagshaw's faithful service was terminated.

76. As a result of Defendants' actions, Mrs. Bagshaw has suffered, and will continue to suffer, both economic and non-economic loss, including but not limited to: loss of wages and benefits, future pecuniary losses, emotional distress, damage to her reputation, and other compensatory damages. Mrs. Bagshaw is entitled to recover for those losses and to injunctive relief, pursuant to 42 U.S.C.§ 1983, *et seq.*

77. Russo acted maliciously and/or in reckless disregard of Mrs. Bagshaw's federally protected rights, and Plaintiff is therefore also entitled to punitive damages.

78. Mrs. Bagshaw is also entitled, under 42 U.S.C. § 1988, to recover attorney fees and costs incurred in pursuing her claims.

**FIRST CAUSE OF ACTION**
(Americans with Disabilities Act – Disability Discrimination v. CHPD)

79. Plaintiff realleges and incorporates by reference all preceding numbered paragraphs.

80. Defendant employs more than 15 employees and is therefore an "employer" as that term is defined in 42 U.S.C. §12111(5)(A).

81. Plaintiff is a disabled person as defined by the ADA. She suffered from a condition which affected her neck, shoulder and back. This condition caused her to lose the ability to sit, bend, and walk.

82. Plaintiff was able to perform the essential functions of her job with or without reasonable accommodation.

83. There were no allegations of poor work performance prior to her injury. Plaintiff was fired after complaining of being treated differently because of her disability.

84. For reasons including but not limited to those described in this Complaint, Defendant has discriminated against Plaintiff because of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. §12111 et seq, and its implementing regulations.

85. Plaintiff was treated differently in the workplace than other co-employees without disabilities who were similarly situated and any reasons for such differing treatment or for allowing such differing treatment to occur are pretextual. The real reasons for such differing treatment had to do, in part or in whole, with Plaintiff's disability.

86. Defendant was aware, or should have been aware, of the actions and inactions described above, because such were obvious and pervasive and because, at various times throughout Plaintiff's employment. Plaintiff complained of them to Defendant on multiple occasions. Despite such awareness, Defendant failed to investigate Plaintiff's complaints and failed to respond in a way reasonably calculated to stop the discrimination.

87. Defendant terminated Plaintiff's employment because of her status as a disabled person under the ADA, in violation of the ADA.

88. Plaintiff has been damaged, and continues to be damaged by Defendant's discriminatory treatment and termination of Plaintiff.

89. In violating the Americans with Disabilities Act, Defendant acted intentionally and with malice and/or reckless, callous, and/or deliberate indifference to Plaintiff's federally protected rights. Plaintiff is therefore entitled to compensatory and punitive damages pursuant to 42 U.S.C. §12117.

## SECOND CAUSE OF ACTION
(Americans with Disabilities Act – Failure to Accommodate v. CHPD)

90. Plaintiff realleges and incorporates by reference all preceding numbered paragraphs.

91. On February 12, 2017, Mrs. Bagshaw suffered a serious injury after a cabinet fell off the wall in the break room and landed on her.

92. Because of the injuries sustained from the wall cabinet, Mrs. Bagshaw was unable to bend, sit, walk, and stand, for any extended period of time without considerable pain.

93. Mrs. Bagshaw requested on multiple occasions to work light duty, but her requests were denied.

94. Offering Mrs. Bagshaw light duty is a reasonable accommodation, but Defendant failed to offer light duty. Defendant failed to engage in the interactive process to discuss reasonable accommodations.

95. Plaintiff has been damaged and continues to be damaged by Defendant's failure to accommodate her.

96. In violating the Americans with Disabilities Act, Defendant acted intentionally and with malice and/or reckless, callous, and/or deliberate indifference to Plaintiff's federally protected rights. Plaintiff is therefore entitled to compensatory and punitive damages pursuant to 42 U.S.C. §12117.

### THIRD CAUSE OF ACTION
(Americans with Disabilities Act – Retaliation v. CHPD)

97. Plaintiff realleges and incorporates by reference all preceding numbered paragraphs.

98. Plaintiff complaints of discrimination constitutes protected activity under the Americans with Disabilities Act.

99. After Plaintiff informed Defendant that she was being treated differently Defendant unlawfully retaliated against Plaintiff by disciplining her, suspending her and then terminating her employment.

100. Plaintiff has been damaged and continues to be damaged by Defendant's unlawful harassment.

101. In violating the Americans with Disabilities Act, Defendant acted intentionally and with malice and/or reckless, callous, and/or deliberate indifference to Plaintiff's federally protected rights. Plaintiff is therefore entitled to compensatory and punitive damages pursuant to 42 U.S.C. §12117.

## FOURTH CAUSE OF ACTION
### (Gender Discrimination in Violation of Title VII)

102. Plaintiff re-alleges all statements in previous paragraphs and incorporates them herein.

103. Plaintiff was subjected to a hostile work environment based on sexual harassment.

104. Defendant knew or should have known about this hostile environment but failed to alter or eliminate the hostile environment.

105. Plaintiff informed agents and managers of CHPD of the hostile environment.

106. The Defendant, as evidenced by their failure to take any action to remedy the complaints raised by Plaintiff, failed to exercise reasonable care to prevent and promptly correct any discriminatory behavior and failed to make a good faith effort to comply with Title VII.

107. As described in the foregoing paragraphs of this Complaint, the Defendant engaged in discriminatory conduct by taking adverse action against Plaintiff while she was employed by the Defendant and by terminating her from her employment with the Defendant.

108. By virtue of the activities described in the foregoing paragraphs of this Complaint, the Defendant intentionally discriminated against Plaintiff because of her gender and, by reason of such discriminatory conduct, violated Title VII.

109. As a direct and proximate consequence of these violations by the Defendant, Plaintiff has been damaged and will continue to be damaged, and Defendant is liable, for her lost salary and employment benefits and for compensatory damages not including lost pay as defined by Title VII, including but not limited to emotional pain, suffering, inconvenience, mental

anguish, and other nonpecuniary losses, in an amount not yet fully ascertained, plus prejudgment interest thereon.

      110.    The Defendant engaged in such discriminatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Plaintiff; and, as a result, the Defendant is liable to Plaintiff for punitive damages, in an amount not yet fully ascertained, but at least equal to three times actual damages, not to exceed the applicable cap on damages set forth in 42 U.S.C. § 1981a for compensatory and punitive damages taken together.

### FIFTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII v. CHPD)

      111.    Plaintiff re-alleges all statements in previous paragraphs and incorporates them herein.

      112.    The Defendant, as evidenced by its failure to take any action to remedy the complaints raised by Plaintiff, failed to exercise reasonable care to prevent and promptly correct any retaliatory behavior and failed to make a good faith effort to comply with Title VII.

      113.    As described in the foregoing paragraphs of this Complaint, the Defendant engaged in retaliatory conduct by taking adverse action against the Plaintiff while she was employed by the Defendant and by terminating her.

      114.    By virtue of the activities described in the foregoing paragraphs of this Complaint, the Defendant intentionally retaliated against Plaintiff because she opposed what she reasonably believed to be an unlawful practice under Title VII; and, by reason of such retaliatory conduct, the Defendant violated Title VII, 42 U.S.C. § 2000e(3)(a), as amended.

      115.    As a direct and proximate consequence of these violations by the Defendant, Plaintiff has been damaged and will continue to be damaged, and the Defendant is liable, for her lost salary and employment benefits and for compensatory damages not including lost pay as

defined by Title VII, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in an amount not yet fully ascertained, plus prejudgment interest thereon.

116.   The Defendant engaged in such retaliatory conduct with knowledge that the wrongful conduct would violate federal law and with malice, evil intent, and callous or reckless indifference to the rights of Plaintiff; and, as a result, the Defendant is liable to Plaintiff for punitive damages, in an amount not yet fully ascertained, but at least equal to three times actual damages, not to exceed the applicable cap on such damages set forth in 42 U.S.C. § 1981a for compensatory and punitive damages taken together.

## SIXTH CAUSE OF ACTION
### (42 U.S.C. §1983 – Deprivation of Plaintiff's Due Process and Property Interests)
### (Asserted against all Defendants)

117.   Plaintiff reasserts and incorporates by reference all paragraphs set forth above.

118.   Plaintiff had the reasonable expectation of continuing as a Police Officer under the protections of the laws of the United States Constitution.

119.   The termination of Plaintiff from CHPD, without a predetermination hearing, a post deprivation hearing, and the opportunity to be represented by counsel, violated Plaintiff's right to procedural due process of law under the United States Constitution.

120.   CHPD's conduct violated Plaintiff's Fourteenth Amendment rights by depriving Plaintiff of a property interest without due process.

121.   At all times, Russo acted under the color of state law and was the final policy-making authority of CHPD in the determination to fire Plaintiff.

122.   Defendants' conduct violated Plaintiff's Fourth Amendment rights by depriving Plaintiff of her right to privacy and subjecting her to an illegal search and seizure.

123.     As a result of Defendants' actions, Plaintiff has suffered, and will continue to suffer, both economic and non-economic loss, including but not limited to: loss of wages and benefits, future pecuniary losses, emotional distress, damage to her reputation, and other compensatory damages. Plaintiff is entitled to recover for those losses and to injunctive relief, pursuant to 42 U.S.C.§ 1983, *et seq.*

124.     Russo acted maliciously and/or in reckless disregard of Plaintiff's federally protected rights, and Plaintiff is therefore also entitled to punitive damages.

125.     Plaintiff is also entitled, under 42 U.S.C. § 1988, to recover attorney fees and costs incurred in pursuing his claims.

**SEVENTH CAUSE OF ACTION**
**(42 U.S.C. §1983 – Deprivation of Plaintiff's Right to be Free from Unreasonable Search and Seizure)**
**(Asserted against all Defendants)**

126.     Plaintiff reasserts and incorporates by reference all paragraphs set forth above.

127.     In ordering Plaintiff to submit to a blood draw, and by carrying out that order, Defendants were acting under color of law.

128.     Defendants, acting under color of state law, deprived the Plaintiffs of rights, privileges, and immunities secured by the Constitution and laws of the United States, including those enumerated in and secured by the Fourth Amendment to the Constitution, by subjecting Plaintiffs to an unlawful search and seizure by ordering her to submit to a blood draw without her consent.

129.     Under CHPD Policy 1007.4.3 Reasonable Suspicion Testing, reasonable suspicion testing may only occur after a supervisor makes a determination that there is reasonable suspicion to believe than an employee is using, is under the influence of, or is in

possession of alcohol or controlled substances, and also after written documentation setting fort the specific, contemporaneous articulable observations concerning the appearance, behavior, speech or body odors of the employee which resulted in the reasonable suspicion determination. No such documents were ever created, and no such determination was ever made.

130. CHPD Policy 1007.4.4 Sworn Procedure 7 requires that reasonable suspicion drug testing be conducted by first Med between the hours of 9 a.m. and 9 p.m. Plaintiff's blood was drawn during these hours and the testing was not conducted by First Med, but rather by UPD Officer Defendant Emily Wood.

131. By failing to follow its own procedures, and by ordering Plaintiff to submit to a blood screening without her consent, CHPD has violated Plaintiff's Fourth Amendment Rights under the United States Constitution to be free from unreasonable searches and seizures.

## *PRAYER FOR RELIEF*

Wherefore, Plaintiff prays for judgment against Defendants as follows:

1. For back wages and an award of anticipated front pay;

2. For costs advanced related to damages in an amount to be determined at trial;

3. For damages under the Americans with Disabilities Act and Title VII of the Civil Rights Act related to emotional distress and other general damages in an amount to be determined at trial;

4. For Compensatory Damages;

5. For Plaintiff's attorney's fees pursuant to 42 U.S.C. § 12205:

6. For punitive damages in an amount to be determined at trial; and

7.      For interest on the forgoing, costs of court, and such other relief as the court deems just and equitable.

**JURY TRIAL REQUESTED**

Dated this December 19, 2018

 /s/ Zakia A. Richardson
Zakia A. Richardson
Attorney for Plaintiff